IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DOMINALAW GROUP, PC, LLO, | ) | CASE NO. 8:12CV58 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| ROBERT BERNSTEIN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant Robert Bernstein's Motion to Dismiss Complaint for Lack of Personal Jurisdiction (Filing No. 5). For the reasons discussed below, Defendant's Motion will be granted.

## FACTUAL BACKGROUND[1]

Plaintiff DominaLaw Group, P.C. LLO ("DominaLaw") is a Nebraska professional corporation, practicing law, with its principal place of business in Omaha, Nebraska. Defendant Robert Bernstein currently resides in Naples, Florida. Until May 15, 2009, Bernstein was the managing member of Trilogy Development Company, LLC ("Trilogy"), an entity organized under the laws of the State of Nevada with its principal place of business in Missouri. Bernstein has never resided in Nebraska, does not own property in Nebraska, and does not individually conduct business in the State. In 2005, Bernstein paid income tax to the State of Nebraska with respect to the activities of Wow Entertainment Corporation, a Wyoming corporation that does business in Nebraska.

---

[1] The facts are taken from the parties' indexes of evidence (Filing Nos. 7, 13). *See Coen v. Coen*, 509 F.3d 900, 904-05 (8th Cir. 2007) (providing that the plaintiff's showing for a motion to dismiss for lack of personal jurisdiction "must be tested, not by the pleading alone, but by affidavits and exhibits presented" in support of and in opposition to the motion to dismiss for lack of personal jurisdiction). For purposes of the pending Motion to Dismiss, the Court must view the facts provided in the affidavits and exhibits in the light most favorable to the Plaintiff and resolve all factual conflicts in its favor. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991).

On or about May 31, 2007, JE Dunn Construction Company ("JE Dunn") filed a lawsuit that arose out of a development project in Kansas City, Missouri, known as The West Edge, which led to arbitration proceedings against Trilogy in Kansas City, Missouri. Initially, the Missouri law firm of Bryan Cave represented Trilogy. In or about July 2008, it was determined that Trilogy would retain additional counsel to assist Bryan Cave in the arbitration proceedings. Derek Feagans contacted DominaLaw, on behalf of Trilogy, to ask for assistance in representing Trilogy in the arbitration proceedings. On July 29, 2008, David Domina of DominaLaw met with Bernstein, Feagans, and other representatives of Trilogy in Kansas City, Missouri. On July, 31, 2008, Domina sent a letter to Feagans summarizing the meeting. In the letter, Domina acknowledged that the meeting focused on Trilogy's disputes with JE Dunn and confirmed that DominaLaw was being engaged as counsel for Trilogy stating, "[w]e will become engaged on your behalf as counsel for Trilogy, and if necessary Mr. Bernstein, in the arbitration proceedings and the overall project." (Filing No. 7-1, ¶ 19.) On September 30, 2008, Domina sent an engagement letter to Trilogy at its Missouri office, directed to the attention of Bernstein in his capacity as Trilogy's manager. Bernstein signed the engagement letter in his individual capacity and as manager of Trilogy. The engagement letter does not contain a choice of law provision, a forum selection provision or any other provision that would cause Bernstein to consent to jurisdiction over him in Nebraska.

The majority of DominaLaw's services on behalf of Trilogy were performed in Missouri. Domina traveled to Kansas City, Missouri, more than thirty times, attending every arbitration hearing in Kansas City and going to Kansas City for strategy meetings, meetings with local counsel, arbitration preparation and meetings with witnesses. However,

2

DominaLaw did conduct conference telephone calls and at least one witness meeting, and he prepared briefs, correspondence and other writings in Nebraska. Furthermore, Domina and Bernstein exchanged emails and phone calls during the time Domina was rendering professional services to Bernstein. All of DominaLaw's bills reflected services provided to Trilogy in connection with the arbitration proceedings in Missouri. During the course of his relationship with DominaLaw, Bernstein never traveled to Nebraska.

When the arbitration proceedings concluded, Trilogy filed for bankruptcy. At this time, the relationship between DominaLaw and Bernstein ended when Bernstein obtained counsel in Kansas City.

On January 3, 2012, DominaLaw filed this action in the District Court for Douglas County, Nebraska, seeking fees allegedly due under the engagement agreement. On February 8, 2012, Bernstein removed the case to this Court. The Motion to Dismiss followed.

## DISCUSSION

To survive a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008). When jurisdiction has been challenged, "the plaintiff has the burden of proving facts supporting personal jurisdiction," *Miller v. Nippon Carbon Co.,* 528 F.3d 1087, 1090 (8th Cir. 2008), but a plaintiff need only "establish[] a prima facie case" that personal jurisdiction exists. *Steinbuch*, 518 F.3d at 585. The plaintiff's showing "'must be tested, not by the pleading alone, but by the

affidavits and exhibits presented'" in support of and in opposition to the motion to dismiss for lack of personal jurisdiction. *Coen v. Coen*, 509 F.3d 900, 904-05 (8th Cir. 2007) (citation omitted). When considering these evidentiary materials, the Court must view the facts in the light most favorable to the plaintiff and resolve all factual conflicts in its favor. *Dakota Indus., Inc.,* 946 F.2d at 1387.

In determining whether this Court has personal jurisdiction over a nonresident defendant, two issues are presented: (1) whether the requirements of the Nebraska long-arm statute are satisfied and (2) whether the exercise of jurisdiction over this Defendant will violate the Fourteenth Amendment Due Process Clause. *Coen*, 509 F.3d at 905. Because Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536,[2] has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution, *Wagner v. Unicord Corp.*, 526 N.W.2d 74, 77 (Neb. 1995), the Court need only determine whether the assertion of jurisdiction offends constitutional limits.

---

[2]Neb. Rev. Stat. § 25-536 provides:

A court may exercise personal jurisdiction over a person:
    (1) Who acts directly or by an agent, as to a cause of action arising from the person:
        (a) Transacting any business in this state;
        (b) Contracting to supply services or things in this state;
        (c) Causing tortious injury by an act or omission in this state;
        (d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
        (e) Having an interest in, using, or possessing real property in this state; or
        (f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or
    (2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

In order to exercise personal jurisdiction over a nonresident defendant, due process requires that the defendant have "minimum contacts" with the forum state such that maintenance of a suit against that defendant does not offend "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The nonresident defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and it is essential that "'there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Coen*, 509 F.3d at 905. "Purposeful availment" means that the defendant's contacts with the forum state must not be "'random,'" "'fortuitous,'" "'attenuated,'" or the result of "'unilateral activity of a third person or another party.'" *Burger King*, 471 U.S. at 475 (citation omitted). "'Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause.'" *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006) (citation omitted). A defendant's minimum contacts with the forum state must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).

Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, such contacts must be analyzed in light

of other factors to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 476. The factors, as articulated by the Eighth Circuit Court of Appeals, are: "'(1) the nature and quality of contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.'" *Coen*, 509 F.3d at 905 (citation omitted). The fourth and fifth factors, however, are of secondary importance and not determinative. *Id.; see also Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). In applying these factors, the central inquiry is the "'relationship among the defendant, the forum, and the litigation.'" *Land-O-Nod*, 708 F.2d at 1340 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

The third factor–the relation of the cause of action to the contacts–gives rise to the distinction between specific and general jurisdiction. While general jurisdiction refers to the power of a forum state to adjudicate a claim involving a particular defendant regardless of where the cause of action arose,[3] specific jurisdiction refers to jurisdiction arising from or related to a defendant's actions within a forum state. *Bell Paper Box*, 22 F.3d at 819 (citing *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993)). When specific jurisdiction exists, "[a]ll that is required is that a commercial actor purposefully direct its efforts towards residents of the forum state." *Id.* at 820.

---

[3]Since the Complaint and the affidavits and exhibits presented in support of the Motion to Dismiss show the only contacts between Bernstein and Nebraska to be those related to the dispute giving rise to this suit, there are insufficient contacts for the Court to exercise general jurisdiction over Bernstein. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994); *see also Helicopteros Nacionales de Columbia, S.A., v. Hall*, 466 U.S. 408, 415 (1984).

Bernstein contends that this Court cannot exercise specific jurisdiction over him because DominaLaw cannot establish that its claim arises from Bernstein's forum-related activities when he has not purposefully availed himself of the benefits of Nebraska law. Specifically, Bernstein argues that he did not engage DominaLaw personally, DominaLaw was hired in relation to Trilogy's arbitration proceedings in Missouri, the engagement letter was signed in Missouri, legal services were provided to Trilogy in Missouri, and the vast majority of legal service provided by DominaLaw was provided in Missouri. Bernstein argues that this Court's exercise of personal jurisdiction over him would offend traditional notions of fair play and substantial justice inherent in the Due Process Clause.

In response, DominaLaw argues that jurisdiction in this Court is proper because (1) Bernstein pursued a business relationship with DominaLaw in the State of Nebraska, (2) the bulk of legal research, legal analysis, and preparation for performance of legal service was conducted in Nebraska, and (3) by signing the engagement letter in his personal capacity, Bernstein, being a savvy businessman, could reasonably anticipate being haled into court in Nebraska. DominaLaw claims that Bernstein should have known that the effect of his conduct would be felt in Nebraska. *See Dakota Indus.,* 946 F.2d at 1390-91 (citation omitted) (stating the "'effects' test" allows a court to assert "personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state'").

The Court finds that DominaLaw has failed to establish that Bernstein's contacts with Nebraska are anything more than "'random,'" "'fortuitous,'" "'attenuated'" or resulting from the "'unilateral activity of a third person or another party.'" *Burger King*, 471 U.S. at 475 (citations omitted). Here, the Complaint and the affidavits and exhibits presented in

opposition to the Motion to Dismiss do not dispute that (1) Bernstein did not initiate contact between DominaLaw and Trilogy, (2) DominaLaw was hired due to ongoing arbitration proceedings in Missouri, (3) DominaLaw sent the engagement letter to Missouri, where it was subsequently signed, and (4) DominaLaw provided legal services for the benefit of Trilogy.  DominaLaw has not shown that Bernstein purposefully availed himself of the privileges of this forum through emails, phone calls, and by signing the engagement letter in his individual capacity.

Aside from claiming that emails and telephone calls were exchanged, see *Johnson*, 444 F.3d at 955, DominaLaw has not pointed to any evidence regarding the specifics or frequency of such exchanges.  Absent more, these contacts are insufficient to justify the exercise of personal jurisdiction.  An individual's contract with an out-of-state party is not in and of itself sufficient to establish minimum contacts to support the exercise of personal jurisdiction.  *Burger King*, 471 U.S. at 478.  While Bernstein signed the engagement letter in his individual capacity, DominaLaw has not pointed to any evidence indicating that it provided services to or represented Bernstein individually.  Moreover, DominaLaw has not disputed the following: the lawsuit, arbitration, and majority of the witness preparation took place in Missouri; Domina spent a significant amount of time in Missouri; all bills for legal services were paid by Trilogy; and Bernstein never traveled to Nebraska.  Therefore, the Court finds that Bernstein did not purposefully avail himself of the privilege of conducting activities within Nebraska such that he should have anticipated being haled to court in Nebraska.  Because Bernstein lacks minimum contacts with Nebraska, the Court need not analyze the *Coen* factors.

In summary, after viewing the facts in the light most favorable to DominaLaw, the Court concludes that DominaLaw has failed to meet its burden of demonstrating that Bernstein had "minimum contacts" with Nebraska. Maintenance of this suit against Bernstein in Nebraska would offend "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463).

Accordingly,

IT IS ORDERED:

1. The Defendant Robert Bernstein's Motion to Dismiss Complaint for Lack of Personal Jurisdiction (Filing No. 5) is granted;

2. This case is dismissed; and

3. A separate Judgment will be entered.

DATED this 19th day of April, 2012.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge